IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BATTLE SPORTS SCIENCE, LLC AND ACTIVE BRANDS, COMPANY, LLC, | Case No. 8:16-cv-00352 RFR-TDT |
| Plaintiffs, | **AMENDED COMPLAINT DEMAND FOR JURY TRIAL** |
| v. | |
| SHOCK DOCTOR, INC. | |
| Defendant. | |

Plaintiffs Battle Sports Science, LLC ("Battle Sports") and Active Brands Company, LLC ("Active Brands") hereby state and allege as follows in support of their claims against Defendant Shock Doctor, Inc. ("Shock Doctor" or "Defendant").

### THE NATURE OF THE ACTION

1.      Battle Sports designed and developed an innovative mouth and lip guard, the "Oxygen Lip Protector" which protects the teeth and lips of athletes engaged in physical activities.  In addition, the Battle Sports Oxygen Lip Protector is designed in such a way to allow a user to have unobstructed breathing while the mouth guard is in place, and similarly, to allow a user to re-hydrate while wearing the mouth guard.

2.      Battle Sports' Oxygen Lip Protector product is protected by a broad range of intellectual property rights, including utility patents, trademark and trade dress rights.  As a result of Battle Sports' success in introducing its innovative mouth guard product, Defendant seeks to capitalize on this success by imitating the innovative technology and distinctive product design associated with the Battle Sports' Oxygen Lip Protector product line.

1

3.     Rather than pursue its own independent product designs and developments, Shock Doctor, Inc. ("Shock Doctor") knowingly and intentionally copied Battle Sports' product designs in violation of Battle Sports' intellectual property rights.  Shock Doctor designed and markets its Max Airflow Lip Guard 3300 (the "Accused Product") to look like, and work like, Battle Sports' Oxygen Lip Protector in violation of Battle Sports' intellectual property rights.

4.     Through this action, Plaintiffs seek to stop Shock Doctor's illegal conduct and to obtain damages and equitable relief for the intellectual property violations that have occurred to date.

## THE PARTIES

5.     Battle Sports is a Nebraska limited liability company having its principal place of business at 2111 S. 67th Street Suite 400, Omaha, NE 68106.  Battle Sports designed, developed and marketed the Oxygen Lip Protector, and owned all intellectually property relating to the Oxygen Lip Protector until June of 2016.  Battle Sports assigned and transferred all intellectual property rights relating to the Oxygen Lip Protector to Active Brands on or about June 20, 2016.

6.     Active Brands is a Nebraska limited liability company having its principal place of business at 2111 S. 67th Street Suite 400, Omaha, NE  68106.  Active Brands is currently marketing and has been marketing the Oxygen Lip Protector since June of 2016.  Active Brands and Battle Sports are hereinafter collectively referred to as "Plaintiffs."

7.     Shock Doctor is a California corporation having its principal place of business at 11488 Slater Avenue, Fountain Valley, CA 92708.  Shock Doctor also markets and sells a variety of sporting good products, including mouth guards.

2

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

9.      This Court has personal jurisdiction over Shock Doctor because Shock Doctor has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1114 and 1125, and places the Accused Product into the stream of commerce, with the knowledge or understanding that such products are sold in the State of Nebraska, including in this District.  The acts by Shock Doctor cause injury to Plaintiffs within this District.  Upon information and belief, Shock Doctor derives substantial revenue from the sale of Accused Product within this District and expects its actions to have consequences within this District.

10.      Venue is proper within this District under 28 U.S.C. §§ 1391(b) and (c) because Shock Doctor transacts business within this District and offers for sale in this District products that infringe the Plaintiffs' patents, trademark and trade dress.  In addition, venue is proper because Plaintiffs' principal place of business is in this District and Plaintiffs suffered harm in this District.

## BACKGROUND

11.      Battle Sports is a designer and developer of a range of athletic equipment and apparel, including mouth and lip guards.

12.      In or around 2011, Battle Sports developed and began marketing an innovative and distinctive design for athletic mouth guards, the Oxygen Lip Protector.  Prior to Battle

3

4826-5919-6984. 5

Sports' innovative mouth and lip guards, most lip protector mouth guards were comprised of one solid piece of molded plastic with very small or no breathing holes.

13.     At the time Battle Sports introduced the Oxygen Lip Protector, no other mouth guard product on the market looked like, or functioned like the Battle Sports product.  Battle Sports applied for a patent to protect the innovative features of the Oxygen Lip Protector.

14.     After launching the Oxygen Lip Protector product, sales of this innovative product grew quickly.

15.     Shortly after Battle Sports began marketing the Oxygen Lip Protector, Shock Doctor began marketing a nearly identical mouth guard.

16.     In early January, 2015, Battle Sports notified Shock Doctor in writing that the Max Airflow mouth guard violated a pending patent and other intellectual property rights belonging to Battle Sports with respect to the Oxygen Lip Protector device.  Battle Sports specifically articulated the basis for its conclusion that the Accused Product infringed Battle Sports' patent rights.

17.     On January 13, 2015, the United States Patent and Trademark Office issued a patent to Battle Sports for the Oxygen Lip Protector ("the '488 Patent"), after a full and fair examination.

18.     Despite receiving this notice, Shock Doctor did not cease its sales of infringing products.  Instead, Shock Doctor claims it made certain superficial changes to its Max Airflow mouth guard.  However, the changes made by Shock Doctor failed to cure the infringing nature of its offending Max Airflow mouth guard product.

19.     On or about May 10, 2016, Battle Sports received a second patent for its Oxygen Lip Protector product after a full and fair examination ("the '413 Patent").

20.     On or about July 5, 2016, Battle Sports received a design patent for its Oxygen Lip Protector product after a full and fair examination ("the 'D889 Patent").

21.     Battle Sports has transferred and assigned all patents and all intellectual property rights associated with the Oxygen Lip Protector including the '488, '413 and 'D889 Patents to Active Brands.

## PLAINTIFFS' INTELLECTUAL PROPERTY RIGHTS

22.     Plaintiffs have protected the Oxygen Lip Protector product through a broad range of intellectual property rights.   This protection includes the following patents (the "Asserted Patents"):

| Patent Number | Title |
| --- | --- |
| 8,931,488 (the "'488 Patent") (attached hereto as Exhibit A) | Mouth Guard With Breathing And Drinking Aperture |
| 9,333,413 (the "'413 Patent") (attached hereto as Exhibit B) | Mouth Guard With Breathing And Drinking Aperture |
| D760,889 (the "'D889 Patent") (attached hereto as Exhibit D) | Mouth Guard |

23.     In addition, Active Brands owns U.S. Registration Number 4,616,238 for the mark **BATTLE** covering, among other things, "mouth guards for athletic use" (the "Registered Trademark") (attached hereto as Exhibit C).

24.     Plaintiffs' Oxygen Lip Protectors also introduced the unique look of fangs, digital camouflage designs, and an American Flag design to the outer wall of the mouth guard product.

25.    Plaintiffs' Oxygen Lip Protector product line is offered in a range of unique, non-functional color and design combinations as depicted below:

     

    

26.    Plaintiffs' Oxygen Lip Protector embody inherently distinctive trade dress characterized by a general overall appearance and commercial impression created through shape, color scheme and pictorial elements.  These elements include the following combinations:

- An oval outer wall design combined with an oval stamp on the upper or lower half of the outer wall which contains the BATTLE brand, along with a unique oval shaped fluid gap in combination with a primary color.

- An oval outer wall design combined with an oval stamp on the upper or lower half of the outer wall which contains the BATTLE brand, along with a unique oval shaped fluid gap in combination with a digital camouflage color pattern.

- An oval outer wall design combined with a unique oval shaped fluid gap and a distinctive image of black and white fangs.

- An oval outer wall design combined with an oval stamp on the upper or lower half of the outer wall which contains the BATTLE brand, along with a unique oval shaped fluid gap in combination with a distinctive image of the United States flag.

27.    The Oxygen Lip Protectors in all of their various forms constitute inherently distinctive trade dress (collectively referred to as "Plaintiffs' Trade Dress") that is protectable

without any evidence or proof of secondary meaning. The Plaintiffs' Trade Dress serves to identify the origin and source of the Plaintiffs' Oxygen Lip Protectors.

28.     In the alternative, in the event that the Oxygen Lip Protectors are found to constitute product configuration rather than packaging, the design of the Oxygen Lip Protectors have acquired secondary meaning through the wide-spread use, sales and popularity of these products. Plaintiffs' Trade Dress identifies the origin and source of the Oxygen Lip Protectors by virtue of wide-spread popularity, continuous use, advertising and competitor imitation of these products.

## INFRINGEMENT OF PLAINTIFFS' PATENTS

29.     Upon information and belief, Shock Doctor has marketed multiple versions of its Max Airflow mouth guard, including versions marketed in 2015 and 2016 ("the Accused Product"). For the reasons articulated herein, all versions of the Max Airflow mouth guard marketed by Shock Doctor in 2015 and 2016 infringe upon Plaintiffs' patents, including the '488, '413, and 'D889 Patents.

30.     Shock Doctor's infringement of the Asserted Patents as identified in this Amended Complaint provides Shock Doctor with innovative functionality that was not the result of Shock Doctor's efforts. Shock Doctor has not obtained permission from Plaintiffs to use the inventions claimed in the Asserted Patents.

## INFRINGMENT OF PLAINTIFFS' TRADEMARK AND TRADE DRESS

31.     The Accused Product embodies a combination of several elements of the Plaintiffs' Registered Trademark and Trade Dress, namely:

- Use of the identical color combinations;

- Use of a black and white oval with lettering inserted in the oval, placed at the top of the mouth guard;

      •     Use of a virtually identical fang design;

      •     Use of a virtually identical American Flag design;

      •     Use of a virtually identical digital camouflage color designs.

32.    The Accused Product includes an identical oval design located at the top of the outer wall. The Accused Product clearly mimics all of Plaintiffs' unique designs as depicted below:



4826-5919-6984. 5



**FIRST CLAIM FOR RELIEF – INFRINGEMENT OF THE '488 PATENT**

33.     Plaintiffs incorporate and reallege paragraphs 1 through 32 of this Amended Complaint.

34.     The '488 Patent was duly and legally issued by the United States Patent and Trademark office on January 13, 2015 after full and fair examination.   Active Brands is the owner of the '488 Patent.

35.     Shock Doctor has made, used, sold, and/or imported a mouth guard product, including at least the Shock Doctor Max Airflow 3300 (Item No. 3356A shown below), that infringes claim 1 of the '488 Patent under 35 U.S.C. § 271(a).

36.     The Accused Product is a mouth guard as recited by claim 1 of the '488 Patent.

4826-5919-6984. 5

37.     The Accused Product includes "a pair of planar, spaced-apart molar receiving members; the molar receiving members having opposite upper and lower biting surfaces" as recited by claim 1 of the '488 Patent.



38.     The Accused Product includes "forward end portions of the molar receiving members being positioned in a spaced-apart relationship with one another, defining a fluid gap" as recited by claim 1 of the '488 Patent.



4826-5919-6984. 5

39.    The Accused Product includes "such that the mouth guard does not include biting surfaces for incisor teeth within upper and lower arcades of a user's teeth" as recited by claim 1 of the '488 Patent.   As shown below, the Accused Product includes two rows of a thin, collapsible film extending between the molar receiving members.  The film does not constitute a biting surface and does not include ribs or other features that provide grip and stability.



40.    The Accused Product includes "an outer wall having opposing forward and rearward surfaces; the rearward surface of the outer wall being shaped to confront an exterior surface of the user's lips" as recited by claim 1 of the '488 Patent.



11

41.     The Accused Product includes "an inner wall, positioned between the molar receiving members and the outer wall" as recited by claim 1 of the '488 Patent.



42.     The Accused Product includes "the inner wall being shaped to extend along at least a substantial length of an outer edge portion of the molar receiving members and spanning the fluid gap between the molar receiving members" as recited by claim 1 of the '488 Patent.  As shown below, the varied height of the "inner wall" does not prevent it from extending along the molar receiving members and spanning the fluid gap as claimed.



4826-5919-6984. 5

43.     The Accused Product includes "the inner wall having opposing forward and rearward surfaces; the forward surface of the inner wall being shaped to confront an inner surface of the user's lips; the rearward surface of the inner wall being shaped to confront forward surfaces of the user's teeth" as recited by claim 1 of the '488 Patent.  As shown below, the varied height of the "inner wall" does not prevent it from confronting a user's lips and teeth as claimed.



44.     The Accused Product includes "a conduit extending between the inner and outer walls; the conduit having an open passage that extends through opposite end portions of the conduit" as recited by claim 1 of the '488 Patent.



13

45.    The Accused Product includes "the opening passage penetrating the inner and outer walls and positioned to be in open fluid communication with the fluid gap" as recited by claim 1 of the '488 Patent.



46.    The Accused Product includes "the conduit having an outer circumferential surface having a longitudinal length such that the forward surface of the inner wall is longitudinally separated from the rearward surface of the outer wall by a gap defined by the outer circumferential surface of the conduit extending between the inner and outer wall" as recited by claim 1 of the '488 Patent.



47.    The Accused Product includes "the fluid gap having a width, along an entire length of the fluid gap, that is wider than a width of the open passage such that fluid may flow along a linear pathway, which is coaxial with the open passage, from opposite end portions of the conduit passage at the inner wall, through the fluid gap without confronting an opposing surface of the molar receiving members" as recited by claim 1 of the '488 Patent.





48.    On information and belief, Shock Doctor had actual or constructive notice of the '488 Patent at least as early as 2015.

49.     On information and belief, Shock Doctor had actual or constructive notice of the '488 Patent at least as early as May, 2016.

50.     On information and belief, Shock Doctor was aware of the application that matured into the '488 Patent at least as early as 2013.

51.     On information and belief, Shock Doctor or its agents compared the '488 Patent to the Accused Product at least as early as 2015.

52.     On information and belief, Shock Doctor or its agents compared the '488 Patent to the Accused Product at least as early as May, 2016.

53.     On information and belief, Shock Doctor had actual or constructive knowledge of the patent application that matured into the '488 Patent, and/or of the '488 Patent, prior to the filing of the present lawsuit.

**SECOND CLAIM FOR RELIEF – INFRINGEMENT OF THE '413 PATENT**

54.     Plaintiffs incorporate and reallege paragraphs 1 through 53 of this Amended Complaint.

55.     The '413 Patent was duly and legally issued by the United States Patent and Trademark office on May 10, 2016 after full and fair examination.  Active Brands is the owner of the '413 Patent.

56.      Shock Doctor has made, used, sold, and/or imported a mouth guard product, including at least the Shock Doctor Max Airflow 3300 (Item No. 3356A shown below), that infringes claim 1 of the '413 Patent under 35 U.S.C. § 271(a).

57.     The Accused Product is a mouth guard as recited by claim 1 of the '413 Patent.

58.    The Accused Product includes "a pair of spaced-apart molar receiving members having opposite upper and lower biting surfaces" as recited by claim 1 of the '413 Patent.



59.    The Accused Product includes "forward end portions of the molar receiving members being positioned in a spaced-apart relationship with one another, defining a fluid gap" as recited by claim 1 of the '413 Patent.



4826-5919-6984. 5

60.    The Accused Product includes "an outer wall having opposing forward and rearward surfaces; the rearward surface of the outer wall being shaped to confront an exterior surface of a user's lips" as recited by claim 1 of the '413 Patent.



61.    The Accused Product includes "an inner wall, positioned between the molar receiving members and the outer wall" as recited by claim 1 of the '413 Patent.



18

62.    The Accused Product includes "a rearward inner wall portion being shaped to extend along at least a portion of a length of an outer edge portion of the molar receiving members and a forward inner wall portion being shaped to extend along at least a portion of a width of the mouth guard, forward of the fluid gap between the molar receiving members" as recited by claim 1 of the '413 Patent.



63.    The Accused Product includes "the inner wall having opposing forward and rearward surfaces; the forward surface of the inner wall being shaped to confront an inner surface of the user's mouth; the rearward surface of the inner wall being shaped to confront forward surfaces of the user's teeth" as recited by claim 1 of the '413 Patent.



19

64.    The Accused Product includes "a conduit extending between the inner and outer walls such that the forward inner wall portion is longitudinally separated from the rearward surface of the outer wall by a gap defined by a length of the conduit" as recited by claim 1 of the '413 Patent.



65.    The Accused Product includes "the conduit having at least one open passage that extends through opposite end portions of the conduit; the open passage penetrating the forward inner wall portion and outer wall" as recited by claim 1 of the '413 Patent.



66.    The Accused Product includes "the fluid gap having a width, along an entire length of the fluid gap, that is at least as wide as a width of the open passage such that fluid may flow along a linear pathway, from the open end portion of the conduit passage adjacent the inner wall, through the fluid gap" as recited by claim 1 of the '413 Patent.



67.    On information and belief, Shock Doctor had actual or constructive notice of the '413 Patent at least as early as May, 2015.

68.    On information and belief, Shock Doctor was aware of the application that matured into the '413 Patent at least as early as 2015.

69.    On information and belief, Shock Doctor had actual or constructive knowledge of the patent application that matured into the '413 Patent, and/or of the '413 Patent, prior to the filing of the present lawsuit.

**THIRD CLAIM FOR RELIEF – INFRINGEMENT OF THE 'D889 PATENT**

70.    Plaintiffs incorporate and reallege paragraphs 1 through 69 of this Amended Complaint.

71.     The 'D889 Patent was duly and legally issued by the United States Patent and Trademark office on July 5, 2016 after full and fair examination.  Active Brands is the owner of the 'D889 Patent.

72.     The 'D889 Patent claims "[t]he ornamental design for a mouth guard, as shown and described."

73.     Shock Doctor has made, used, sold, and/or imported mouth guard products, including at least the Shock Doctor Max Airflow 3300 (Item No. 3356A shown below in black), that infringe the 'D889 Patent under 35 U.S.C. § 271(a).

74.     The Accused Product comprises the design for a mouth guard as shown in Figure 1 of the 'D889 Patent.  On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design shown in Figure 1.

| 'D889 Patent | Accused Product |
|---|---|
|  | |

75.     The Accused Product comprises the design for a mouth guard as shown in Figure 2 of the 'D889 Patent.  On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 2.

22

| 'D889 Patent | Accused Product |
|---|---|



FIG. 2

76. The Accused Product comprises the design for a mouth guard as shown in Figure 3 of the 'D889 Patent. On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 3.

| 'D889 Patent | Accused Product |
|---|---|



FIG. 3

23

77.     The Accused Product comprises the design for a mouth guard as shown in Figure 4 of the 'D889 Patent.  On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 4.

| 'D889 Patent | Accused Product |
|---|---|
|  | |

78.     The Accused Product comprises the design for a mouth guard as shown in Figure 5 of the 'D889 Patent.  On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 5.

| 'D889 Patent | Accused Product |
|---|---|
|  | |

24

79.  The Accused Product comprises the design for a mouth guard as shown in Figure 6 of the 'D889 Patent.  On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 6.

| 'D889 Patent | Accused Product |
|---|---|
|  | |

80.  The Accused Product comprises the design for a mouth guard as shown in Figure 7 of the 'D889 Patent.  On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 7.

| 'D889 Patent | Accused Product |
|---|---|
|  | |

81.     On information and belief, Shock Doctor had actual or constructive knowledge of the patent application that matured into the 'D889 Patent prior to the filing of the present lawsuit.

## FOURTH CLAIM FOR RELIEF – FEDERAL TRADE DRESS INFRINGEMENT

82.     Plaintiffs incorporate and reallege paragraphs 1 through 81 of this Amended Complaint.

83.     Active Brands is the owner of all right and title to the distinctive Oxygen Lip Protector Trade Dress.  The Trade Dress, as embodied in the Oxygen Lip Protector, is inherently distinctive and not functional.

84.     Prior to Shock Doctor's introduction of the infringing Accused Product, Shock Doctor was aware of Battle Sports' business and had either actual notice and knowledge, or constructive notice, of Plaintiffs' Trade Dress rights.

85.     Shock Doctor's manufacturing and distribution of the Accused Product with identical color schemes, use of an oval at the top of the guard, use of a fang design, use of a digital camouflage design and use of an American Flag design on the outer wall of the mouth guards is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Shock Doctor with Plaintiffs, or as to the origin, sponsorship or approval by Plaintiffs of Shock Doctor's goods and/or commercial activities.

86.     Shock Doctor's manufacture and distribution of the Accused Product with identical color schemes, use of an oval at the top of the guard, use of a fang design, use of a digital camouflage design and use of an American Flag design on the outer wall of the mouth guards allows Shock Doctor to unfairly benefit from Plaintiffs' reputation and success, thus allowing the Shock Doctor products to derive commercial value that they would not otherwise attain.

26

87.     Shock Doctor's actions constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88.     Shock Doctor knew of Plaintiffs' Trade Dress when it designed the Accused Product, and has refused to change its product design and appearance despite Plaintiffs' objections.  Accordingly, Shock Doctor's infringement has been and continues to be intentional, willful and without regard to Plaintiffs' Trade Dress rights.

89.     Plaintiffs have been and will continue to be irreparably harmed and damaged by Shock Doctor's conduct, and Plaintiffs lack an adequate remedy at law to compensate for this harm and damage.

90.     Plaintiffs are informed and believe, and on that basis allege, that Shock Doctor has gained profits by virtue of its infringement of Plaintiffs' Trade Dress.

91.     Plaintiffs have also sustained damages as a direct and proximate result of Shock Doctor's infringement of Plaintiffs' Trade Dress in an amount to be proven at trial.

92.     Because Shock Doctor's actions have been willful, Plaintiffs are entitled to treble its actual damages or Shock Doctor's profits, whichever is greater, and to an award of costs, and this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

**FIFTH CLAIM FOR RELIEF – FEDERAL TRADEMARK INFRINGEMENT**

93.     Plaintiffs incorporate and reallege paragraphs 1 through 92 of this Amended Complaint.

94.     Active Brands is the owner of U.S. Registration Number 4,616,238 for the following design mark:  .

95.     Shock Doctor has infringed Plaintiffs' Registered Trademark by using an identical design in an identical location on the Accused Product.

96.     Prior to Shock Doctor's introduction of the Accused Product, Shock Doctor was aware of Battle Sports' business and had either actual notice and knowledge, or constructive notice of Plaintiffs' Registered Trademark.

97.     Shock Doctor's manufacturing and distribution of the Accused Product with an identical oval design as to that depicted in Plaintiffs' Registered Trademark is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Shock Doctor with Plaintiffs, or as to the origin, sponsorship or approval by Plaintiffs of Shock Doctor's goods and/or commercial activities.

98.     Shock Doctor's manufacture and distribution of the Accused Product with an identical oval design as to that depicted in Plaintiffs' Registered Trademark allows Shock Doctor to unfairly benefit from Plaintiffs' reputation and success, thus allowing the Shock Doctor products to derive commercial value that they would not otherwise attain.

99.     Shock Doctor knew of Plaintiffs' Registered Trademark when it designed the Accused Product, and has refused to change its product appearance despite objections. Accordingly, Shock Doctor's infringement has been and continues to be intentional, willful and without regard to Plaintiffs' Registered Trademark rights.

100.     Plaintiffs have been and will continue to be irreparably harmed and damaged by Shock Doctor's conduct and Plaintiffs lack an adequate remedy at law to compensate for this harm and damage.  Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to an injunction against Shock Doctor's continuing infringement of Plaintiffs' Registered Trademark.

101.     Plaintiffs are informed and believe, and on that basis allege, that Shock Doctor has gained profits by virtue of its infringement of Plaintiffs' Registered Trademark.

4826-5919-6984. 5

102.    Plaintiffs have also sustained damages as a direct and proximate result of Shock Doctor's infringement of Plaintiffs' Registered Trademark in an amount to be proven at trial.

103.    Because Shock Doctor's actions have been willful, Plaintiffs are entitled to treble their actual damages or Shock Doctor's profits, whichever is greater, and to an award of costs, and this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### SIXTH CLAIM FOR RELIEF – UNFAIR COMPETITION

104.    Plaintiffs incorporate and reallege paragraphs 1 through 103 of this Amended Complaint.

105.    Shock Doctor's actions, as described above, are likely to deceive the public as between products originating from Shock Doctor and those originating from Plaintiffs and therefore constitute unfair competition in violation of the common law of the State of Nebraska.

106.    Shock Doctor's actions have been willful and deliberate.

107.    Shock Doctor's actions and activities have been committed willfully with an intent to damage Plaintiffs and to divert business from Plaintiffs, and have caused and will continue to cause damage and irreparable harm and injury to Plaintiffs unless and until such time as Shock Doctor is enjoined from such conduct.

### SEVENTH CLAIM FOR RELIEF – UNJUST ENRICHMENT

108.    Plaintiffs incorporate and reallege paragraphs 1 through 107 of this Amended Complaint.

109.    As a result of the conduct alleged herein, Shock Doctor has been unjustly enriched to Plaintiffs' detriment.  Plaintiffs seek a full accounting and disgorgement of all ill-gotten gains and profits resulting from Shock Doctor's inequitable activities.

4826-5919-6984. 5

## JURY DEMAND

Plaintiff demands a trial by jury on all issues triable by jury.

## REQUEST FOR PLACE OF TRIAL

Plaintiff requests Omaha, Nebraska as the place of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a.      A judgment that Shock Doctor has infringed one or more claims of each of Plaintiffs' Asserted Patents.

b.      An order and judgment preliminarily and permanently enjoining Shock Doctor and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement of the Asserted Patents.

c.      A judgment awarding Plaintiffs all damages adequate to compensate for Shock Doctor's infringement of the Asserted Patents, and in no event, less than a reasonable royalty for Shock Doctor's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law.

d.      A judgment awarding Plaintiffs all damages adequate to compensate for Shock Doctor's infringement of Plaintiffs' Registered Trademark, and in no event, less than a reasonable royalty for Shock Doctor's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law.

4826-5919-6984. 5

e.    A judgment awarding Plaintiffs all damages, including treble damages, based on Shock Doctor's willful trademark and trade dress infringement, pursuant to 35 U.S.C. § 284, together with prejudgment interest.

f.    Actual damages suffered by Plaintiffs as a result of Shock Doctor's unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law.

g.    Reasonable funds for corrective advertising.

h.    An accounting of Shock Doctor's profits pursuant to 15 U.S.C. § 1117.

i.    Costs of suit and reasonable attorneys' fees.

j.    Any other remedy to which Plaintiffs may be entitled, including all available remedies under federal and Nebraska state law.

Dated this 21st day of September, 2016.

BATTLE SPORTS SCIENCE, LLC and
ACTIVE BRANDS COMPANY, LLC,
Plaintiffs


By: /s/ Michael S. Degan #20372
    Michael S. Degan, NE #20372
    John P. Passarelli, NE #16018
    Victoria H. Buter, NE #23841
    Jason S. Jackson, NE #25030
    Kutak Rock LLP
    The Omaha Building
    1650 Farnam Street
    Omaha, NE  68102-2186
    (402) 346-6000
    (402) 346-1148
    Michael.degan@kutakrock.com
    john.passarelli@kutakrock.com
    vicki.buter@kutakrock.com
    jason.jackson@kutakrock.com

4826-5919-6984. 5

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jason W. Grams
LAMSON, DUGAN & MURRAY LLP
jgrams@ldmlaw.com

James R. Steffen
Kevin P. Wagner
Peter M. Routhier
Doowon R. Chung
FAEGRE BAKER DANIELS LLP
James.steffen@FaegreBD.com
kevin.wagner@FaegreBD.com
peter.routhier@FaegreBD.com
doowon.chung@FaegreBD.com

*/s/ Michael S. Degan*
Michael S. Degan

1