**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| BATTLE SPORTS SCIENCE, LLC AND ACTIVE BRANDS COMPANY, LLC<br><br>*Plaintiffs*,<br><br>*v*.<br><br>SHOCK DOCTOR, INC.,<br><br>*Defendant*. | CASE NO. 8:16-cv-00352-RFR-TDT |

# SHOCK DOCTOR, INC.'S ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT

Defendant Shock Doctor, Inc. hereby submits its Answer and Defenses to Plaintiffs Battle Sports Science, LLC ("Battle Sports") and Active Brands Company, LLC's ("Active Brands") (collectively, "Plaintiffs") Amended Complaint (Dkt. No. 18) ("Amended Complaint").

## ANSWER TO THE COMPLAINT

As set forth below, Shock Doctor answers the allegations in the Amended Complaint by reproducing each of the pertinent headings therein [in brackets] and the corresponding paragraph numbering, if any, with the text of each of the pertinent paragraphs within the Amended Complaint in single-spaced, **bold typeface**, immediately followed by Shock Doctor's answer(s) thereto. Shock Doctor's reproduction herein of any material set forth in the Amended Complaint is solely for the purpose of convenience and is not, and should not be construed as, an admission by Shock Doctor that any allegations or other statements in the Amended Complaint, whether explicit or implied, are true, correct, or admitted by Shock Doctor. All allegations in the Amended Complaint that Shock Doctor does not expressly admit below, are hereby denied.

Shock Doctor incorporates by reference its Motion to Dismiss the Amended Complaint, (Dkt. No. 21), which outlines numerous deficiencies in the Amended Complaint. This Answer should not be construed as a concession by Shock Doctor that the Amended Complaint provides adequate notice of its claims. Shock Doctor answers the Amended Complaint now despite its pending Motion to Dismiss because of uncertainty as to whether the filing of its motion stays the time to answer an amended complaint. *See Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*, 495 F.3d 1378, 1379–80 (Fed. Cir. 2007).

## [THE NATURE OF THE ACTION]

**1. Battle Sports designed and developed an innovative mouth and lip guard, the "Oxygen Lip Protector" which protects the teeth and lips of athletes engaged in physical activities. In addition, the Battle Sports Oxygen Lip Protector is designed in such a way to allow a user to have unobstructed breathing while the mouth guard is in place, and similarly, to allow a user to re-hydrate while wearing the mouth guard.**

ANSWER: Shock Doctor denies the allegations in paragraph 1.

**2. Battle Sports' Oxygen Lip Protector product is protected by a broad range of intellectual property rights, including utility patents, trademark and trade dress rights. As a result of Battle Sports' success in introducing its innovative mouth guard product, Defendant seeks to capitalize on this success by imitating the innovative technology and distinctive product design associated with the Battle Sports' Oxygen Lip Protector product line.**

ANSWER: Shock Doctor denies the allegations in paragraph 2.

**3. Rather than pursue its own independent product designs and developments, Shock Doctor, Inc. ("Shock Doctor") knowingly and intentionally copied Battle Sports' product designs in violation of Battle Sports' intellectual property rights. Shock Doctor designed and markets its Max Airflow Lip Guard 3300 (the "Accused Product") to look like, and work like, Battle Sports' Oxygen Lip Protector in violation of Battle Sports' intellectual property rights.**

ANSWER: Shock Doctor denies the allegations in paragraph 3.

**4. Through this action, Plaintiffs seek to stop Shock Doctor's illegal conduct and to obtain damages and equitable relief for the intellectual property violations that have occurred to date.**

ANSWER: Shock Doctor denies the allegations in paragraph 4.

**[THE PARTIES]**

**5. Battle Sports is a Nebraska limited liability company having its principal place of business at 2111 S. 67th Street Suite 400, Omaha, NE 68106. Battle Sports designed, developed and marketed the Oxygen Lip Protector, and owned all intellectually property relating to the Oxygen Lip Protector until June of 2016. Battle Sports assigned and transferred all intellectual property rights relating to the Oxygen Lip Protector to Active Brands on or about June 20, 2016.**

ANSWER: Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 and, therefore, denies them.

**6. Active Brands is a Nebraska limited liability company having its principal place of business at 2111 S. 67th Street Suite 400, Omaha, NE 68106. Active Brands is currently marketing and has been marketing the Oxygen Lip Protector since June of 2016. Active Brands and Battle Sports are hereinafter collectively referred to as "Plaintiffs."**

ANSWER: Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 6 and, therefore, denies them.

**7. Shock Doctor is a California corporation having its principal place of business at 11488 Slater Avenue, Fountain Valley, CA 92708. Shock Doctor also markets and sells a variety of sporting good products, including mouth guards.**

ANSWER: Shock Doctor denies that Shock Doctor is a California corporation having its principal place of business at 11488 Slater Avenue, Fountain Valley, CA 92708. Shock Doctor is a corporation organized and existing under the laws of the state of Delaware with its principal place of business at 110 Cheshire Ln, Suite 120, Minnetonka, MN 55305. Shock Doctor admits that it markets and sells a variety of sporting good products, including mouth guards.

**[JURISDICTION AND VENUE]**

**8. This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).**

ANSWER: Shock Doctor denies that this Court has subject matter jurisdiction for the reasons stated in its Motion to Dismiss (Dkt. No. 21). Shock Doctor admits that if this action were refiled as a new action by Plaintiffs who had standing, then this Court would have "subject matter jurisdiction under 15 U.S.C. § 1221 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 (U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction). Shock Doctor denies the merit and validity of any of Plaintiffs' claims for which subject matter jurisdiction may be had. Shock Doctor denies any remaining allegations in paragraph 8.

**9. This Court has personal jurisdiction over Shock Doctor because Shock Doctor has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1114 and 1125, and places the Accused Product into the stream of commerce, with the knowledge or understanding that such products are sold in the State of Nebraska, including in this District. The acts by Shock Doctor cause injury to Plaintiffs within this District. Upon information and belief, Shock Doctor derives substantial revenue from the sale of Accused Product within this District and expects its actions to have consequences within this District.**

ANSWER: Shock Doctor admits that this Court has personal jurisdiction over it. Shock Doctor denies that it has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1114 and 1125. Shock Doctor denies the remaining allegations in paragraph 9.

**10. Venue is proper within this District under 28 U.S.C. §§ 1391(b) and (c) because Shock Doctor transacts business within this District and offers for sale in this District products that infringe the Plaintiffs' patents, trademark and trade dress. In addition, venue is proper because Plaintiffs' principal place of business is in this District and Plaintiffs suffered harm in this District.**

ANSWER: Shock Doctor admits that venue is proper within this District, but contends that this case should be transferred to the District of Minnesota for the reasons provided in Shock Doctor's Motion to Transfer (Dkt. No. 21). Shock Doctor denies the remaining allegations in paragraph 10.

**[BACKGROUND]**

**11. Battle Sports is a designer and developer of a range of athletic equipment and apparel, including mouth and lip guards.**

ANSWER: Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 and, therefore, denies them.

**12. In or around 2011, Battle Sports developed and began marketing an innovative and distinctive design for athletic mouth guards, the Oxygen Lip Protector. Prior to Battle Sports' innovative mouth and lip guards, most lip protector mouth guards were comprised of one solid piece of molded plastic with very small or no breathing holes.**

ANSWER: Shock Doctor denies the allegations in paragraph 12.

**13. At the time Battle Sports introduced the Oxygen Lip Protector, no other mouth guard product on the market looked like, or functioned like the Battle Sports product. Battle Sports applied for a patent to protect the innovative features of the Oxygen Lip Protector.**

ANSWER: Shock Doctor denies that at the time Battle Sports introduced the Oxygen Lip Protector, no other mouth guard product on the market looked like, or functioned like the Battle Sports product. Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 13 and, therefore, denies them.

**14. After launching the Oxygen Lip Protector product, sales of this innovative product grew quickly.**

ANSWER: Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 and, therefore, denies them.

**15. Shortly after Battle Sports began marketing the Oxygen Lip Protector, Shock Doctor began marketing a nearly identical mouth guard.**

ANSWER: Shock Doctor denies the allegations in paragraph 15.

**16. In early January, 2015, Battle Sports notified Shock Doctor in writing that the Max Airflow mouth guard violated a pending patent and other intellectual property rights belonging to Battle Sports with respect to the Oxygen Lip Protector device. Battle Sports specifically articulated the basis for its conclusion that the Accused Product infringed Battle Sports' patent rights.**

ANSWER: Shock Doctor admits that Battle Sports wrote to Shock Doctor in January, 2015. Shock Doctor denies the remaining allegations in paragraph 16.

**17. On January 13, 2015, the United States Patent and Trademark Office issued a patent to Battle Sports for the Oxygen Lip Protector ("the '488 Patent"), after a full and fair examination.**

ANSWER: Shock Doctor admits that an uncertified copy of the '488 Patent is attached to Plaintiffs' Original Complaint (Dkt. No. 1) ("Original Complaint") as Exhibit A and that the cover page thereof shows an issued date of January 13, 2015. Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies them.

**18. Despite receiving this notice, Shock Doctor did not cease its sales of infringing products. Instead, Shock Doctor claims it made certain superficial changes to its Max Airflow mouth guard. However, the changes made by Shock Doctor failed to cure the infringing nature of its offending Max Airflow mouth guard product.**

ANSWER: Shock Doctor denies the allegations in paragraph 18.

**19. On or about May 10, 2016, Battle Sports received a second patent for its Oxygen Lip Protector product after a full and fair examination ("the '413 Patent").**

ANSWER: Shock Doctor admits that an uncertified copy of the '413 Patent is attached to the Original Complaint as Exhibit B and that the cover page thereof shows an issued date of May 10, 2016. Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies them.

**20. On or about July 5, 2016, Battle Sports received a design patent for its Oxygen Lip Protector product after a full and fair examination ("the 'D889 Patent").**

ANSWER: Shock Doctor admits that an uncertified copy of the 'D889 Patent is attached to the Original Complaint as Exhibit D and that the cover page thereof shows an issued date of July 5, 2016. Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies them.

**21. Battle Sports has transferred and assigned all patents and all intellectual property rights associated with the Oxygen Lip Protector including the '488, '413 and 'D889 Patents to Active Brands.**

ANSWER: Shock Doctor admits that the transfer documents on file with the United States Patent Office purport to transfer and assign Battle Sports's patents and intellectual property rights associated with the '488, '413, and 'D889 patents to Active Brands. Shock Doctor denies the remaining allegations of paragraph 21.

**[PLAINTIFFS' INTELLECTUAL PROPERTY RIGHTS]**

**22. Plaintiffs have protected the Oxygen Lip Protector product through a broad range of intellectual property rights. This protection includes the following patents (the "Asserted Patents"):**

| Patent Number | Title |
|---|---|
| **8,931,488 (the "'488 Patent") (attached hereto as Exhibit A)** | **Mouth Guard With Breathing And Drinking Aperture** |
| **9,333,413 (the "'413 Patent") (attached hereto as Exhibit B)** | **Mouth Guard With Breathing And Drinking Aperture** |
| **D760,889 (the "'D889 Patent") (attached hereto as Exhibit D)** | **Mouth Guard** |

ANSWER: Shock Doctor admits that an uncertified copy of the '488 Patent is attached to the Original Complaint as Exhibit A and that the cover page thereof includes the title "Mouth Guard With Breathing And Drinking Aperture." Shock Doctor admits that an uncertified copy of the '413 Patent is attached to the Original Complaint as Exhibit B and that the cover page thereof includes the title "Mouth Guard With Breathing And Drinking Aperture." Shock Doctor admits that an uncertified copy of the 'D889 Patent is attached to the Original Complaint as Exhibit D and that the cover page thereof includes the title "Mouth Guard." Shock Doctor denies that the '488, '413, and 'D889 Patent are attached to the Amended Complaint. Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, therefore, denies them.

**23. In addition, Active Brands owns U.S. Registration Number 4,616,238 for the mark BATTLE covering, among other things, "mouth guards for athletic use" (the "Registered Trademark") (attached hereto as Exhibit C).**

ANSWER: Shock Doctor admits that an uncertified copy of U.S. Registration Number 4,616,238 is attached to the Original Complaint as Exhibit C and that the cover page thereof includes the title "mouth guards for athletic use." Shock Doctor is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23 and, therefore, denies them.

**24. Plaintiffs' Oxygen Lip Protectors also introduced the unique look of fangs, digital camouflage designs, and an American Flag design to the outer wall of the mouth guard product.**

ANSWER: Shock Doctor denies the allegation in paragraph 24.

**25. Plaintiffs' Oxygen Lip Protector product line is offered in a range of unique, non-functional color and design combinations as depicted below:**



ANSWER: Shock Doctor denies the allegations in paragraph 25.

**26. Plaintiffs' Oxygen Lip Protector embody inherently distinctive trade dress characterized by a general overall appearance and commercial impression created through shape, color scheme and pictorial elements. These elements include the following combinations:**

- **An oval outer wall design combined with an oval stamp on the upper or lower half of the outer wall which contains the BATTLE brand, along with a unique oval shaped fluid gap in combination with a primary color.**

- **An oval outer wall design combined with an oval stamp on the upper or lower half of the outer wall which contains the BATTLE brand, along with a unique oval shaped fluid gap in combination with a digital camouflage color pattern.**

- **An oval outer wall design combined with a unique oval shaped fluid gap and a distinctive image of black and white fangs.**

- **An oval outer wall design combined with an oval stamp on the upper or lower half of the outer wall which contains the BATTLE brand, along with a unique oval shaped fluid gap in combination with a distinctive image of the United States flag.**

ANSWER: Shock Doctor denies the allegations in paragraph 26.

**27. The Oxygen Lip Protectors in all of their various forms constitute inherently distinctive trade dress (collectively referred to as "Plaintiffs' Trade Dress") that is protectable without any evidence or proof of secondary meaning. The Plaintiffs' Trade Dress serves to identify the origin and source of the Plaintiffs' Oxygen Lip Protectors.**

ANSWER: Shock Doctor denies the allegations in paragraph 27.

**28. In the alternative, in the event that the Oxygen Lip Protectors are found to constitute product configuration rather than packaging, the design of the Oxygen Lip Protectors have acquired secondary meaning through the wide-spread use, sales and popularity of these products. Plaintiffs' Trade Dress identifies the origin and source of the Oxygen Lip Protectors by virtue of wide-spread popularity, continuous use, advertising and competitor imitation of these products.**

ANSWER: Shock Doctor denies the allegations in paragraph 28.

**[INFRINGEMENT OF PLAINTIFFS' PATENTS]**

**29. Upon information and belief, Shock Doctor has marketed multiple versions of its Max Airflow mouth guard, including versions marketed in 2015 and 2016 ("the Accused Product"). For the reasons articulated herein, all versions of the Max Airflow mouth guard marketed by Shock Doctor in 2015 and 2016 infringe upon Plaintiffs' patents, including the '488, '413, and 'D889 Patents.**

ANSWER: Shock Doctor admits that it has marketed Max Airflow mouth guards, including versions marketed in 2015 and 2016. Shock Doctor denies that any version of the Max Airflow mouth guard marketed by Shock Doctor in 2015 and 2016 infringe upon the Plaintiffs' patents, including the '488, '413, and 'D889 Patents. Shock Doctor denies the remaining allegations in paragraph 29.

**30. Shock Doctor's infringement of the Asserted Patents as identified in this Amended Complaint provides Shock Doctor with innovative functionality that was not the result of Shock Doctor's efforts. Shock Doctor has not obtained permission from Plaintiffs to use the inventions claimed in the Asserted Patents.**

ANSWER: Shock Doctor admits that it has not obtained permission from Plaintiffs to use the Asserted Patents. Shock Doctor denies the remaining allegations in paragraph 30.

**[INFRINGMENT (sic) OF PLAINTIFFS' TRADEMARK AND TRADE DRESS]**

**31. The Accused Product embodies a combination of several elements of the Plaintiffs' Registered Trademark and Trade Dress, namely:**

- **Use of the identical color combinations;**
- **Use of a black and white oval with lettering inserted in the oval, placed at the top of the mouth guard;**
- **Use of a virtually identical fang design;**
- **Use of a virtually identical American Flag design;**
- **Use of a virtually identical digital camouflage color designs.**

ANSWER: Shock Doctor denies the allegations in paragraph 31.

**32. The Accused Product includes an identical oval design located at the top of the outer wall. The Accused Product clearly mimics all of Plaintiffs' unique designs as depicted below:**






US.108330229.05

ANSWER: Shock Doctor denies the allegations in paragraph 32.

**[FIRST CLAIM FOR RELIEF – INFRINGEMENT OF THE '488 PATENT]**

**33. Plaintiffs incorporate and reallege paragraphs 1 through 32 of this Amended Complaint.**

ANSWER: Shock Doctor realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 32 above.

**34. The '488 Patent was duly and legally issued by the United States Patent and Trademark office on January 13, 2015 after full and fair examination. Active Brands is the owner of the '488 Patent.**

ANSWER: Shock Doctor admits that an uncertified copy of the '488 Patent is attached to the Original Complaint as Exhibit A and that the cover page thereof shows an issued date of January 13, 2015. Shock Doctor also admits that transfer documents at the United States Patent Office purport to transfer and assign the '488 Patent to Active Brands. Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34 and, therefore, denies them.

**35. Shock Doctor has made, used, sold, and/or imported a mouth guard product, including at least the Shock Doctor Max Airflow 3300 (Item No. 3356A shown below), that infringes claim 1 of the '488 Patent under 35 U.S.C. § 271(a).**

ANSWER: Shock Doctor admits that it has sold a mouth guard product, including at least the Shock Doctor Max Airflow 3300. Shock Doctor denies the remaining allegations in paragraph 35.

**36. The Accused Product is a mouth guard as recited by claim 1 of the '488 Patent.**

ANSWER: Shock Doctor denies that the allegations in paragraph 36.

**37. The Accused Product includes "a pair of planar, spaced-apart molar receiving members; the molar receiving members having opposite upper and lower biting surfaces" as recited by claim 1 of the '488 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 37.

**38. The Accused Product includes "forward end portions of the molar receiving members being positioned in a spaced-apart relationship with one another, defining a fluid gap" as recited by claim 1 of the '488 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 38.

**39. The Accused Product includes "such that the mouth guard does not include biting surfaces for incisor teeth within upper and lower arcades of a user's teeth" as recited by claim 1 of the '488 Patent. As shown below, the Accused Product includes two rows of a thin, collapsible film extending between the molar receiving members. The film does not constitute a biting surface and does not include ribs or other features that provide grip and stability.**



ANSWER: Shock Doctor denies the allegations in paragraph 39.

**40. The Accused Product includes "an outer wall having opposing forward and rearward surfaces; the rearward surface of the outer wall being shaped to confront an exterior surface of the user's lips" as recited by claim 1 of the '488 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 40.

**41. The Accused Product includes "an inner wall, positioned between the molar receiving members and the outer wall" as recited by claim 1 of the '488 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 41.

**42. The Accused Product includes "the inner wall being shaped to extend along at least a substantial length of an outer edge portion of the molar receiving members and spanning the fluid gap between the molar receiving members" as recited by claim 1 of the '488 Patent. As shown below, the varied height of the "inner wall" does not prevent it from extending along the molar receiving members and spanning the fluid gap as claimed.**



ANSWER: Shock Doctor denies the allegations in paragraph 42.

**43. The Accused Product includes "the inner wall having opposing forward and rearward surfaces; the forward surface of the inner wall being shaped to confront an inner surface of the user's lips; the rearward surface of the inner wall being shaped to confront forward surfaces of the user's teeth" as recited by claim 1 of the '488 Patent. As shown below, the varied height of the "inner wall" does not prevent it from confronting a user's lips and teeth as claimed.**



ANSWER: Shock Doctor denies the allegations in paragraph 43.

**44. The Accused Product includes "a conduit extending between the inner and outer walls; the conduit having an open passage that extends through opposite end portions of the conduit" as recited by claim 1 of the '488 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 44.

**45. The Accused Product includes "the opening passage penetrating the inner and outer walls and positioned to be in open fluid communication with the fluid gap" as recited by claim 1 of the '488 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 45.

**46. The Accused Product includes "the conduit having an outer circumferential surface having a longitudinal length such that the forward surface of the inner wall is longitudinally separated from the rearward surface of the outer wall by a gap defined by the outer circumferential surface of the conduit extending between the inner and outer wall" as recited by claim 1 of the '488 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 46.

**47. The Accused Product includes "the fluid gap having a width, along an entire length of the fluid gap, that is wider than a width of the open passage such that fluid may flow along a linear pathway, which is coaxial with the open passage, from opposite end portions of the conduit passage at the inner wall, through the fluid gap without confronting an opposing surface of the molar receiving members" as recited by claim 1 of the '488 Patent.**






ANSWER: Shock Doctor denies the allegations in paragraph 47.

**48. On information and belief, Shock Doctor had actual or constructive notice of the '488 Patent at least as early as 2015.**

ANSWER: Shock Doctor denies the allegations in paragraph 48.

**49. On information and belief, Shock Doctor had actual or constructive notice of the '488 Patent at least as early as May, 2016.**

ANSWER: Shock Doctor denies the allegations in paragraph 49.

**50. On information and belief, Shock Doctor was aware of the application that matured into the '488 Patent at least as early as 2013.**

ANSWER: Shock Doctor denies the allegations in paragraph 50.

**51. On information and belief, Shock Doctor or its agents compared the '488 Patent to the Accused Product at least as early as 2015.**

ANSWER: Shock Doctor denies the allegations in paragraph 51.

**52. On information and belief, Shock Doctor or its agents compared the '488 Patent to the Accused Product at least as early as May, 2016.**

ANSWER: Shock Doctor denies the allegations in paragraph 52.

**53. On information and belief, Shock Doctor had actual or constructive knowledge of the patent application that matured into the '488 Patent, and/or of the '488 Patent, prior to the filing of the present lawsuit.**

ANSWER: Shock Doctor admits that it was aware of the '488 Patent prior to the filing of the present lawsuit. Shock Doctor denies the remaining allegations in paragraph 53.

**[SECOND CLAIM FOR RELIEF – INFRINGEMENT OF THE '413 PATENT]**

**54. Plaintiffs incorporate and reallege paragraphs 1 through 53 of this Amended Complaint.**

ANSWER: Shock Doctor realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 53 above.

**55. The '413 Patent was duly and legally issued by the United States Patent and Trademark office on May 10, 2016 after full and fair examination. Active Brands is the owner of the '413 Patent.**

ANSWER: Shock Doctor admits that an uncertified copy of the '413 Patent is attached to the Original Complaint as Exhibit A and that the cover page thereof shows an issued date of May 10, 2016. Shock Doctor also admits that transfer documents at the United States Patent Office purport to transfer and assign the '413 Patent to Active Brands. Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 55 and, therefore, denies them.

**56. Shock Doctor has made, used, sold, and/or imported a mouth guard product, including at least the Shock Doctor Max Airflow 3300 (Item No. 3356A shown below), that infringes claim 1 of the '413 Patent under 35 U.S.C. § 271(a).**

ANSWER: Shock Doctor admits that it has sold mouth guard products, including at least the Shock Doctor Max Airflow 3300. Shock Doctor denies the remaining allegations in paragraph 56.

**57. The Accused Product is a mouth guard as recited by claim 1 of the '413 Patent.**

ANSWER: Shock Doctor denies the allegations in paragraph 57.

**58. The Accused Product includes "a pair of spaced-apart molar receiving members having opposite upper and lower biting surfaces" as recited by claim 1 of the '413 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 58.

**59. The Accused Product includes "forward end portions of the molar receiving members being positioned in a spaced-apart relationship with one another, defining a fluid gap" as recited by claim 1 of the '413 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 59.

**60. The Accused Product includes "an outer wall having opposing forward and rearward surfaces; the rearward surface of the outer wall being shaped to confront an exterior surface of a user's lips" as recited by claim 1 of the '413 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 60.

**61. The Accused Product includes "an inner wall, positioned between the molar receiving members and the outer wall" as recited by claim 1 of the '413 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 61.

**62. The Accused Product includes "a rearward inner wall portion being shaped to extend along at least a portion of a length of an outer edge portion of the molar receiving members and a forward inner wall portion being shaped to extend along at least a portion of a width of the mouth guard, forward of the fluid gap between the molar receiving members" as recited by claim 1 of the '413 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 62.

**63. The Accused Product includes "the inner wall having opposing forward and rearward surfaces; the forward surface of the inner wall being shaped to confront an inner surface of the user's mouth; the rearward surface of the inner wall being shaped to confront forward surfaces of the user's teeth" as recited by claim 1 of the '413 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 63.

**64. The Accused Product includes "a conduit extending between the inner and outer walls such that the forward inner wall portion is longitudinally separated from the rearward surface of the outer wall by a gap defined by a length of the conduit" as recited by claim 1 of the '413 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 64.

**65. The Accused Product includes "the conduit having at least one open passage that extends through opposite end portions of the conduit; the open passage penetrating the forward inner wall portion and outer wall" as recited by claim 1 of the '413 Patent.**



ANSWER: Shock Doctor denies the allegations in paragraph 65.

**66. The Accused Product includes "the fluid gap having a width, along an entire length of the fluid gap, that is at least as wide as a width of the open passage such that fluid may flow along a linear pathway, from the open end portion of the conduit passage adjacent the inner wall, through the fluid gap" as recited by claim 1 of the '413 Patent.**




ANSWER: Shock Doctor denies the allegations in paragraph 66.

**67. On information and belief, Shock Doctor had actual or constructive notice of the '413 Patent at least as early as May, 2015.**

ANSWER: Shock Doctor denies the allegations in paragraph 67.

**68. On information and belief, Shock Doctor was aware of the application that matured into the '413 Patent at least as early as 2015.**

ANSWER: Shock Doctor denies the allegations in paragraph 68.

**69. On information and belief, Shock Doctor had actual or constructive knowledge of the patent application that matured into the '413 Patent, and/or of the '413 Patent, prior to the filing of the present lawsuit.**

ANSWER: Shock Doctor admits that it was aware of the patent application that matured into the '413 Patent prior to the filing of the present lawsuit. Shock Doctor denies the remaining allegations in paragraph 69.

**[THIRD CLAIM FOR RELIEF – INFRINGEMENT OF THE 'D889 PATENT]**

**70. Plaintiffs incorporate and reallege paragraphs 1 through 69 of this Amended Complaint.**

ANSWER: Shock Doctor realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 69 above.

**71. The 'D889 Patent was duly and legally issued by the United States Patent and Trademark office on July 5, 2016 after full and fair examination. Active Brands is the owner of the 'D889 Patent.**

ANSWER: Shock Doctor admits that an uncertified copy of the 'D889 Patent is attached to the Original Complaint as Exhibit D and that the cover page thereof shows an issued date of July 5, 2016. Shock Doctor also admits that transfer documents at the United States Patent Office purport to transfer and assign the 'D889 Patent to Active Brands. Shock Doctor is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 71 and, therefore, denies them.

**72. The 'D889 Patent claims "[t]he ornamental design for a mouth guard, as shown and described."**

<u>ANSWER</u>: Shock Doctor admits that an uncertified copy of the 'D889 Patent is attached to the Original Complaint as Exhibit D and that the cover page thereof includes the statement "[t]he ornamental design for a mouth guard, as shown and described."

**73. Shock Doctor has made, used, sold, and/or imported mouth guard products, including at least the Shock Doctor Max Airflow 3300 (Item No. 3356A shown below in black), that infringe the 'D889 Patent under 35 U.S.C. § 271(a).**

<u>ANSWER</u>: Shock Doctor admits that it has sold mouth guard products, including at least the Shock Doctor Max Airflow 3300. Shock Doctor denies the remaining allegations in paragraph 73.

**74. The Accused Product comprises the design for a mouth guard as shown in Figure 1 of the 'D889 Patent. On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design shown in Figure 1.**

| 'D889 Patent | Accused Product |
| --- | --- |
|  FIG. 1 |   |

<u>ANSWER</u>: Shock Doctor denies the allegations in paragraph 74.

**75. The Accused Product comprises the design for a mouth guard as shown in Figure 2 of the 'D889 Patent. On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 2.**

| 'D889 Patent | Accused Product |
|---|---|
|  FIG. 2 |  |

ANSWER: Shock Doctor denies the allegations in paragraph 75.

**76. The Accused Product comprises the design for a mouth guard as shown in Figure 3 of the 'D889 Patent. On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 3.**

| 'D889 Patent | Accused Product |
|---|---|
|  FIG. 3 |  |

ANSWER: Shock Doctor denies the allegations in paragraph 76.

**77. The Accused Product comprises the design for a mouth guard as shown in Figure 4 of the 'D889 Patent. On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 4.**

| 'D889 Patent | Accused Product |
|---|---|
|  FIG. 4 |  |

ANSWER: Shock Doctor denies the allegations in paragraph 77.

**78. The Accused Product comprises the design for a mouth guard as shown in Figure 5 of the 'D889 Patent. On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 5.**

| 'D889 Patent | Accused Product |
|---|---|
|  FIG. 5 |  |

ANSWER: Shock Doctor denies the allegations in paragraph 78.

**79. The Accused Product comprises the design for a mouth guard as shown in Figure 6 of the 'D889 Patent. On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 6.**

| 'D889 Patent | Accused Product |
|---|---|
|  *FIG. 6* |  |

ANSWER: Shock Doctor denies the allegations in paragraph 79.

**80. The Accused Product comprises the design for a mouth guard as shown in Figure 7 of the 'D889 Patent. On information and belief, an ordinary observer would think the Accused Product is substantially the same as the patented design as shown in Figure 7.**

| 'D889 Patent | Accused Product |
|---|---|
|  *FIG. 7* |  |

ANSWER: Shock Doctor denies the allegations in paragraph 80.

**81. On information and belief, Shock Doctor had actual or constructive knowledge of the patent application that matured into the 'D889 Patent prior to the filing of the present lawsuit.**

ANSWER: Shock Doctor denies the allegations in paragraph 81.

**[FOURTH CLAIM FOR RELIEF – FEDERAL TRADE DRESS INFRINGEMENT]**

**82. Plaintiffs incorporate and reallege paragraphs 1 through 81 of this Amended Complaint.**

ANSWER: Shock Doctor realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 81 above.

**83. Active Brands is the owner of all right and title to the distinctive Oxygen Lip Protector Trade Dress. The Trade Dress, as embodied in the Oxygen Lip Protector, is inherently distinctive and not functional.**

ANSWER: Shock Doctor denies the allegations in paragraph 83.

**84. Prior to Shock Doctor's introduction of the infringing Accused Product, Shock Doctor was aware of Battle Sports' business and had either actual notice and knowledge, or constructive notice, of Plaintiffs' Trade Dress rights.**

ANSWER: Shock Doctor denies the allegations in paragraph 84.

**85. Shock Doctor's manufacturing and distribution of the Accused Product with identical color schemes, use of an oval at the top of the guard, use of a fang design, use of a digital camouflage design and use of an American Flag design on the outer wall of the mouth guards is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Shock Doctor with Plaintiffs, or as to the origin, sponsorship or approval by Plaintiffs of Shock Doctor's goods and/or commercial activities.**

ANSWER: Shock Doctor denies the allegations in paragraph 85.

**86. Shock Doctor's manufacture and distribution of the Accused Product with identical color schemes, use of an oval at the top of the guard, use of a fang design, use of a digital camouflage design and use of an American Flag design on the outer wall of the mouth guards allows Shock Doctor to unfairly benefit from Plaintiffs' reputation and success, thus allowing the Shock Doctor products to derive commercial value that they would not otherwise attain.**

ANSWER: Shock Doctor denies the allegations in paragraph 86.

**87. Shock Doctor's actions constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).**

ANSWER: Shock Doctor denies the allegations in paragraph 87.

**88. Shock Doctor knew of Plaintiffs' Trade Dress when it designed the Accused Product, and has refused to change its product design and appearance despite Plaintiffs' objections. Accordingly, Shock Doctor's infringement has been and continues to be intentional, willful and without regard to Plaintiffs' Trade Dress rights.**

ANSWER: Shock Doctor denies the allegations in paragraph 88.

**89. Plaintiffs have been and will continue to be irreparably harmed and damaged by Shock Doctor's conduct, and Plaintiffs lack an adequate remedy at law to compensate for this harm and damage.**

ANSWER: Shock Doctor denies the allegations in paragraph 89.

**90. Plaintiffs are informed and believe, and on that basis allege, that Shock Doctor has gained profits by virtue of its infringement of Plaintiffs' Trade Dress.**

ANSWER: Shock Doctor denies the allegations in paragraph 90.

**91. Plaintiffs have also sustained damages as a direct and proximate result of Shock Doctor's infringement of Plaintiffs' Trade Dress in an amount to be proven at trial.**

ANSWER: Shock Doctor denies the allegations in paragraph 91.

**92. Because Shock Doctor's actions have been willful, Plaintiffs are entitled to treble its actual damages or Shock Doctor's profits, whichever is greater, and to an award of costs, and this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).**

ANSWER: Shock Doctor denies the allegations in paragraph 92.

**[FIFTH CLAIM FOR RELIEF – FEDERAL TRADEMARK INFRINGEMENT]**

**93. Plaintiffs incorporate and reallege paragraphs 1 through 92 of this Amended Complaint.**

ANSWER: Shock Doctor realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 92 above.

**94. Active Brands is the owner of U.S. Registration Number 4,616,238 for the following design mark:** BATTLE **.**

<u>ANSWER</u>: Shock Doctor admits that an uncertified copy of U.S. Registration Number 4,616,238 is attached to the Original Complaint as Exhibit C. Shock Doctor also admits that transfer documents at the United States Patent Office purport to transfer and assign U.S. Registration Number 4,616,238 to Active Brands. Shock Doctor denies the remaining allegations in paragraph 94.

**95. Shock Doctor has infringed Plaintiffs' Registered Trademark by using an identical design in an identical location on the Accused Product.**

<u>ANSWER</u>: Shock Doctor denies the allegations in paragraph 95.

**96. Prior to Shock Doctor's introduction of the Accused Product, Shock Doctor was aware of Battle Sports' business and had either actual notice and knowledge, or constructive notice of Plaintiffs' Registered Trademark.**

<u>ANSWER</u>: Shock Doctor denies the allegations in paragraph 96.

**97. Shock Doctor's manufacturing and distribution of the Accused Product with an identical oval design as to that depicted in Plaintiffs' Registered Trademark is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Shock Doctor with Plaintiffs, or as to the origin, sponsorship or approval by Plaintiffs of Shock Doctor's goods and/or commercial activities.**

<u>ANSWER</u>: Shock Doctor denies the allegations in paragraph 97.

**98. Shock Doctor's manufacture and distribution of the Accused Product with an identical oval design as to that depicted in Plaintiffs' Registered Trademark allows Shock Doctor to unfairly benefit from Plaintiffs' reputation and success, thus allowing the Shock Doctor products to derive commercial value that they would not otherwise attain.**

ANSWER: Shock Doctor denies the allegations in paragraph 98.

**99. Shock Doctor knew of Plaintiffs' Registered Trademark when it designed the Accused Product, and has refused to change its product appearance despite objections. Accordingly, Shock Doctor's infringement has been and continues to be intentional, willful and without regard to Plaintiffs' Registered Trademark rights.**

ANSWER: Shock Doctor denies the allegations in paragraph 99.

**100. Plaintiffs have been and will continue to be irreparably harmed and damaged by Shock Doctor's conduct and Plaintiffs lack an adequate remedy at law to compensate for this harm and damage. Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to an injunction against Shock Doctor's continuing infringement of Plaintiffs' Registered Trademark.**

ANSWER: Shock Doctor denies the allegations in paragraph 100.

**101. Plaintiffs are informed and believe, and on that basis allege, that Shock Doctor has gained profits by virtue of its infringement of Plaintiffs' Registered Trademark.**

ANSWER: Shock Doctor denies the allegations in paragraph 101.

**102. Plaintiffs have also sustained damages as a direct and proximate result of Shock Doctor's infringement of Plaintiffs' Registered Trademark in an amount to be proven at trial.**

ANSWER: Shock Doctor denies the allegations in paragraph 102.

**103. Because Shock Doctor's actions have been willful, Plaintiffs are entitled to treble their actual damages or Shock Doctor's profits, whichever is greater, and to an award of costs, and this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).**

ANSWER: Shock Doctor denies the allegations in paragraph 103.

**[SIXTH CLAIM FOR RELIEF – UNFAIR COMPETITION]**

**104. Plaintiffs incorporate and reallege paragraphs 1 through 103 of this Amended Complaint.**

ANSWER: Shock Doctor realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 103 above.

**105. Shock Doctor's actions, as described above, are likely to deceive the public as between products originating from Shock Doctor and those originating from Plaintiffs and therefore constitute unfair competition in violation of the common law of the State of Nebraska.**

ANSWER: Shock Doctor denies the allegations in paragraph 105.

**106. Shock Doctor's actions have been willful and deliberate.**

ANSWER: Shock Doctor denies the allegations in paragraph 106.

**107. Shock Doctor's actions and activities have been committed willfully with an intent to damage Plaintiffs and to divert business from Plaintiffs, and have caused and will continue to cause damage and irreparable harm and injury to Plaintiffs unless and until such time as Shock Doctor is enjoined from such conduct.**

ANSWER: Shock Doctor denies the allegation in paragraph 107.

**[SEVENTH CLAIM FOR RELIEF – UNJUST ENRICHMENT]**

**108. Plaintiffs incorporate and reallege paragraphs 1 through 107 of this Amended Complaint.**

ANSWER: Shock Doctor realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in paragraphs 1 through 107 above.

**109. As a result of the conduct alleged herein, Shock Doctor has been unjustly enriched to Plaintiffs' detriment. Plaintiffs seek a full accounting and disgorgement of all ill- gotten gains and profits resulting from Shock Doctor's inequitable activities.**

ANSWER: Shock Doctor denies the allegations in paragraph 109.

**[JURY DEMAND]**

No response to Plaintiffs' Jury Demand is required and, therefore, Shock Doctor does not respond.

**[REQUEST FOR PLACE OF TRIAL]**

No response to Plaintiffs' Request for Place of Trial is required and, therefore, Shock Doctor does not respond.

**[PRAYER FOR RELIEF]**

In response to Plaintiffs' Prayer for Relief, and paragraphs (a) through (j) thereof, Shock Doctor respectfully requests that the Court deny, in all respects, Plaintiffs' claims and any other requests for relief; that Plaintiffs take nothing by way of its claims and any other requests for relief; that Plaintiffs' Complaint, and all claims therein, be dismissed with prejudice; and that the Court enter judgment in favor of Shock Doctor and against Plaintiffs on all claims asserted by Plaintiffs.

**SHOCK DOCTOR'S AFFIRMATIVE DEFENSES**

110. For its defenses, Shock Doctor hereby realleges and incorporates by reference, as if fully set forth herein, its responses and any allegations and affirmative statements set forth in its answer to paragraphs 1–109, above.

111. As stated above, Shock Doctor denies any infringement of Plaintiffs' patents, trade dress, or trademarks. In addition, without admitting or acknowledging that it bears the

burden of proof as to any of them, Shock Doctor asserts at least the following affirmative defenses to Plaintiffs' claims. Further, Shock Doctor specifically reserves all rights to assert additional defenses that become known through the course of discovery.

## FIRST DEFENSE: FAILURE TO STATE A CLAIM

112. Plaintiffs have failed to state a claim upon which relief can be granted.

## SECOND DEFENSE: INVALIDITY

113. Plaintiffs' claims are barred, because each claim of the '488, '413, and 'D889 Patents are invalid for failing to meet and/or comply with one or more of the conditions and requirements of the patent laws and regulations, including, but not limited to, the conditions and requirements set forth in 35 U.S.C. §§ 102, 103, and/or 112.

114. By way of example, and without waiving or limiting any other basis for invalidity that may be available to Shock Doctor, each claim of the '488 and '413 Patents is at least invalid under 35 U.S.C. § 102/103 because, under Plaintiffs' apparent interpretation of those limitations for purposes of its infringement allegations, prior art mouth guards disclose each limitation of the asserted claims. For example, prior art U.S. Patent No. 4,495,945 (the "'945 Patent") discloses a mouth guard that includes a pair of planar, spaced-apart molar receiving members (**14**, **16**) with opposite upper and lower biting surfaces (**50**, **52**); an outer wall (**64**); an inner wall (**32**); a conduit (**70**) extending between the inner and outer walls; and a fluid gap. (*See* '945 Patent at Figs. 1 and 2.)




As a further example, prior art U.S. Patent No. 4,664,109 (the "'109 Patent") discloses a mouth guard that includes a pair of planar, spaced-apart molar receiving members (**17**, **18**) with opposite upper and lower biting surfaces (**17A**, **18A**) being positioned in a spaced apart relationship with one another, defining a fluid gap, such that the mouth guard does not include biting surfaces for incisor teeth within upper and lower arcades of a user's teeth. (*See* '109 Patent at Fig. 1.)



As another example, prior art U.S. Patent No. 5,031,611 (the "'611 Patent") discloses a mouth guard that includes a fluid gap having a width, along an entire length of the fluid gap, that is wider than a width of the open passage (**24**). (*See* '611 Patent at Fig. 1.)




FIG. 1

The prior art thus anticipates the claims of the '488 and '413 patents and/or renders them obvious.

115. By way of another example, and without waiving or limiting any other basis for invalidity that may be available to Shock Doctor, the 'D889 Patent is invalid under 35 U.S.C. § 103 as obvious because the 'D889 Patent design would have been obvious to a designer of ordinary skill who designs mouth guards. For example, prior art U.S. Design Patent D538,926 (the "'D926 Patent), the '945 Patent, the '109 Patent, and the '611 Patent each create basically the same visual impression as the 'D889 Patent. As another example, the 'D926, '945, '109, and '611 Patents each could be modified with any of the others to create the same overall visual appearance as the 'D889 Patent.

**'D926 Patent**



116. By way of further example, and without waiving or limiting any other basis for invalidity that may be available to Shock Doctor, each claim of the ’488 and ’413 Patents is invalid under 35 U.S.C. § 112, ¶ 1 (now § 112(a)) because neither the specifications, nor the provisional patent applications to which the ’488 and ’413 Patents claim priority, provide a “written description of the invention” or describes the subject matter of all limitations in sufficiently “full, clear, concise, and exact terms as to enable” a person of ordinary skill in the art to which those claims pertain to “make and use” the claimed inventions. For example, to the extent that Plaintiffs attempt to broaden the definition of “inner wall,” neither the specifications, nor the provisional patent applications to which the ’488 and ’413 Patents claim priority, provide a sufficient written description of the broadened definition.

117. As a further example, and without waiving or limiting any other basis for invalidity that may be available to Shock Doctor, each claim of the ’488 and ’413 Patents is invalid under 35 U.S.C. § 112, ¶ 2 (now § 112(b)) for failing to pointing out and distinctly claiming the subject matter which the inventor regards as the invention. For example, the ’488 and ’413 Patents fail to disclose sufficient structure corresponding to the “fluid gap having a

width, along an entire length of the fluid gap, that is wider than a width of the open passage" limitation.

118. Shock Doctor reserves the right to assert any other basis for invalidity that becomes known through the course of discovery.

**THIRD DEFENSE: DISCLAIMER/DISAVOWAL OF CLAIM SCOPE**

119. By virtue of statements, arguments, or amendments made, or positions taken, during the prosecution of one or more of the applications for the Asserted Patents and any related patents, and/or by virtue of statements made within one or more of the specifications thereof, Plaintiffs have disclaimed and/or disavowed the full scope of any allegedly infringed claim of the Asserted Patents and, as such, are estopped from construing any such claim to cover or include, either literally or under the doctrine of equivalents, any product, system, or service of, or any method performed in whole or in part by, Shock Doctor.

**FOURTH DEFENSE: PROSECUTION HISTORY ESTOPPEL**

120. By virtue of statements, arguments, or amendments made, or positions taken during the prosecution of one or more of the applications for the Asserted Patents and any related patents, Plaintiffs are estopped, under the doctrine of prosecution history estoppel, from construing any allegedly infringed claim of the Patents-in-Suit to cover or include under the doctrine of equivalents any alleged Accused Product of Shock Doctor.

**FIFTH DEFENSE: EQUITABLE DOCTRINES**

121. Plaintiffs' claims for relief are barred, in whole or in part, under the principles of equity, including, without limitation, laches, prosecution laches, waiver, implied waiver,

estoppel, prosecution history estoppel, misconduct, unclean hands, misuse, unfair competition, and/or other equitable defenses.

## SIXTH DEFENSE: LIMITATION ON DAMAGES

122. Some or all of Plaintiffs' claims for relief concerning the Asserted Patents are limited or barred as a consequence of failing to comply with the requirements of 35 U.S.C. §§ 285–287 and/or 288.

## SEVENTH DEFENSE: UNAVAILABILITY OF INJUNCTIVE RELIEF

123. Plaintiffs are not entitled to injunctive relief or any other equitable relief at least because any alleged injury to Plaintiffs is not irreparable and because, had Plaintiffs been injured, they would have an adequate remedy at law.

## EIGHTH DEFENSE: RESERVATION OF ADDITIONAL DEFENSES

124. Shock Doctor reserves all defenses in the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses at law or equity that exist now or that may be available in the future based on discovery, any other factual investigation, or any other development relating to this case or any other action.

## RESERVATION OF RIGHTS

125. Shock Doctor reserves the right to amend its Answer to assert additional defenses that are identified or become apparent as a result of additional investigation and discovery in this matter and to adopt and rely upon any defenses asserted by other defendants or parties in any other proceeding involving the '488, '413 or 'D889 Patents.

## PRAYER FOR RELIEF

WHEREFORE, Shock Doctor respectfully requests that the Court deny, in all respects, Plaintiffs' claims and any other requests for relief; that Plaintiffs take nothing by way of its claims and any other requests for relief; that Plaintiffs' Amended Complaint, and all claims therein, be dismissed with prejudice; that the Court enter judgment in favor of Shock Doctor and against Plaintiffs on all claims asserted by Plaintiffs; and that the Court enter a judgment:

A. Finding that Plaintiffs should take nothing by way of their Amended Complaint;

B. Finding that Shock Doctor does not infringe, and has never infringed, any valid claim of the Patents-in-Suit, whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, or otherwise under any section of 35 U.S.C. § 271;

C. Enjoining Plaintiffs, their counsel, their officers, and any and all persons in active concert or participation with it, either directly or indirectly, from charging infringement of, or instituting any action for infringement of, the '488, '413, and 'D889 Patents against Shock Doctor, its vendors, its business partners, or its customers for the manufacture, use, sale, offer for sale, or importation of Shock Doctor's products, systems, and/or services that Plaintiffs accuse of infringing the '488, '413, and 'D889 Patents;

D. Awarding Shock Doctor its costs, expenses, and fees, including reasonable attorneys' fees, pursuant to 35 U.S.C. § 285, 15 U.S.C. § 1117, Rule 54(d) of the Federal Rules of Civil Procedure, and any other applicable statutes or rules; and

E. Awarding Shock Doctor such other and further relief as the Court deems just, equitable and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Shock Doctor respectfully requests a trial by jury on all issues so triable.

Dated: October 10, 2016

SHOCK DOCTOR, INC., Defendant

s/ Jason W. Grams
Jason W. Grams (#24596)
Lamson, Dugan & Murray LLP
10306 Regency Parkway Drive
Omaha, NE 68114
(402) 397-7300
(402) 397-7824 Fax
jgrams@ldmlaw.com

and

James R. Steffen (admitted *pro hac vice*)
Kevin P. Wagner (admitted *pro hac vice*)
Peter M. Routhier (admitted *pro hac vice)*
Doowon R. Chung (admitted *pro hac vice*)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Fax: (612)-766-1600
James.steffen@FaegreBD.com
kevin.wagner@FaegreBD.com
peter.routhier@FaegreBD.com
doowon.chung@FaegreBD.com
***Attorneys for Defendant Shock Doctor, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Michael S. Degan
John P. Passarelli
Victoria Buter
Jason S. Jackson
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
(402) 346-6000
(402) 346-1148
mike.degan@kutakrock.com
john.passarelli@kutakrock.com
vicki.buter@kutakrock.com
jason.jackson@kutakrock.com
***Attorneys for Plaintiffs Battle Sports Science, LLC and Active Brands, Inc.***

s/ Jason W. Grams